IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

**MICHAEL BOWLING**,

        Petitioner,

v.

**R. HUDGINS,**

        Respondent.

**Civil No.: 5:19CV285**
**(JUDGE BAILEY)**

## REPORT AND RECOMMENDATION

On October 3, 2019, the petitioner, a federal prisoner who was housed at FCI Gilmer, in Glenville, West Virginia, acting *pro se*, filed an Application Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in State or Federal Custody (hereinafter "petition"). ECF No. 1. The petitioner paid the applicable $5.00 filing fee. This matter is assigned to the Honorable John Preston Bailey, United States District Judge, and it has been referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2.

### I.     The Petitioner's Criminal History

On November 9, 2012, the petitioner pleaded guilty to both counts of an Indictment that was returned against him in the Western District of Kentucky. Count 1 charged him with conspiracy to possess with intent to distribute and distribution of 500 grams or more of cocaine. Count 2 charged him with conspiracy to possess with the

1

intent to distribute and distribution of 100 kilos or more of marijuana. On February 7, 2013, he was committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 63 months as to each Count, which were ordered to be served concurrently for a total term of 63 months. Upon release from imprisonment, the petitioner was to be placed on supervised release for a term of 5 years as to each of Counts 1 and 2, which would run concurrently, for a total term of 5 years. On January 7, 2015, the petitioner was resentenced based on a guideline sentencing range that had been lowered by the United States Sentencing Commission. The petitioner's sentence on each count was reduced to 60 months to be served concurrently for a total term of 60 months. The petitioner's term of supervised release remained unchanged. On June 27, 2016, the petitioner was released via good conduct time.

On November 25, 2018, while under the supervision of the United States Probation Office, the petitioner was arrested and charged by state authorities for Theft by Unlawful Taking in Jefferson County District Court, Louisville, Kentucky in Case Number 18-F-19542. On November 26, 2018, the petitioner was released by Kentucky state authorities on a personal recognizance bond.

On January 10, 2019, the United States District Court for the Western District of Kentucky transferred jurisdiction of the petitioner's federal case to the Eastern District of Kentucky. On March 1, 2019, the United States Marshal Service arrested the petitioner pursuant to a warrant issued by the Eastern District of Kentucky for supervised release violations.

On March 28, 2019, the United States District Court for the Eastern District of Kentucky revoked the petitioner's term of supervised release and sentenced him to an

18 month term of confinement in Criminal Case Number 6:19-cr-02-CHB-01. No supervision is to follow.

## II. The Pleadings

### A. The Petition

The Petitioner first alleges that the BOP has denied him credit for 36 days of jail credit, from March 1, 2019, until he was transferred to FCI Gilmer on May 1, 2019. Next, the petitioner alleges that the BOP has failed to calculate his Good Conduct Time ("GCT") as required by the First Step Act ("FSA"). Finally, he alleges that the BOP has not awarded him any "good time incentives" as required by the FSA for programming he completed while incarcerated. For relief, the petitioner seeks 36 days of jail credit, 7 days a years of good time credit for the 36 months that he has served and credit him with an additional 110 days for programming under the First Step Act.

### B. Respondent's Motion and Memorandum

In response to the petitioner's claims, the respondent maintains that his sentence has been properly calculated. More specifically, the respondent contends that the petitioner has been awarded prior custody credit for the time period beginning on November 25, 2019, the date he was arrested and charged by state authorities and ending November 28, 2018, the date he was released by the state on a personal recognizance bond. The respondent further contends that the petitioner was given credit for the time period between March 1, 2019, the date he was arrested by the Marshal Service through March 27, 2019, the date prior to the commencement of his federal sentence. Accordingly, the respondent argues that the petitioner has received credit for

all time spent in custody prior to the commencement of his federal sentence, either as prior custody credit or as time spent actively serving his federal sentence.

In addition, the respondent notes that the BOP updated the petitioner's sentence computation on September 30, 2019, and he received the additional GCT provided for pursuant to the FSA. However, the respondent clarifies that the petitioner was only entitled to the additional credit for his current 18 month sentence and is not entitled to have his original 63-month sentence recalculated under the new method of calculating GCT because the provisions of the new law took effect on July 19, 2019. While acknowledging that the changes made to GCT under the FSA were made retroactive, respondent contends that the changes only are applicable to sentences not yet satisfied as of the effective date of the FSA. The respondent then notes that the petitioner satisfied his initial sentence on June 27, 2016, prior to the effective date of the FSA, and he therefore is not eligible for any further GCT toward the term of his current confinement.

Finally, the respondent argues that the petitioner is not entitled to additional GCT or to time credits for programming under the FSA. Although acknowledging that a review of the petitioner's updated Education Data Transcript shows that he is participating in various programs while incarcerated, the list of eligible programs and productive activities is still being developed and waiting approval. Therefore, the respondent contends that the petitioner's request for such credits is not ripe.

**C. Petitioner's Response**

After reviewing attachments to the response, the petitioner now acknowledges that he has received all the prior custody credit to which he is entitled. However, the

4

petitioner continues to argue that he is entitled to additional GCT on his original 63 month sentence because the five year term of supervised release was all part of the same sentence imposed in the Western District of Kentucky. In addition, he argues that he is entitled to time credits for evidence-based recidivism programming he completed while serving that 63 month sentence. Finally, the petitioner, for the first time, asks the court to consider him for home confinement under the FSA because he is over 60 and two thirds of his sentence is satisfied.

### IV. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts

5

in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable," Id. Therefore, for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Motion for Summary Judgment**

The Supreme Court has recognized the appropriateness of summary judgment motions pursuant to Rule 56 of the Federal Rules of Civil Procedure in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977); see also Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Summary judgment is appropriate "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).

Motions for summary judgment impose a difficult standard on the moving party because it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. FDIC, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson, 477 U.S. at 248-49.

### III. Analysis

**PRIOR CUSTODY CREDIT**

Because the petitioner now concedes that he has received all the prior custody credit to which he is entitled following his arrest by the Marshal Service on March 1, 2019, until he reentered the custody of the BOP on May 1, 2019, this issue is moot.

**GOOD CONDUCT TIME**

The FSA, enacted on December 21, 2018, amended 18 U.S.C. § 3624(b)(1) by increasing the maximum allowable GCT credits for prisoners from, 47 days to 57 days per year. 132 Stat. 5914, § 102(b)(1). The effective date of the change in the GCT calculation was delayed until the Attorney General completed a risk and needs

assessment system to "broadly speaking, review each prisoner's recidivism risk level, award earned time credit as an incentive for participation in recidivism reduction programing and 'determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with [§] 3624'" Bottinelli v. Salazar, 929 F.3d 1196, 1197-98 (9th Cir. 2019) (quoting § 101(a), 132 Stat. at 519697 § 101(a)).

The petitioner signed his habeas petition on September 30, 2019, and it arrived in the Clerk's office on October 3, 2019. On September 30, 2019, the petitioner's sentence computation was updated, and he has received additional GCT pursuant to the FSA, giving him a projected release date of July 19, 2019, via GCT. ECF No. 12-2 at p. 24.

However, the petitioner continues to maintain that he is entitled to additional GCT with respect to his original 63 month sentence, which was subsequently reduced to 60 months. Although he does not indicate how much additional GCT he believes is mandated, the undersigned assumes it is the 7 additional days per year, or 70 days.

The respondent maintains that the petitioner is not entitled to have his prior 63-month sentence recalculated under the new method of calculating GCT, because the provisions of the new law took effect on July 19, 2019, and although the changes made to GCT earnings were made retroactive, the changes are applicable only to sentences not yet satisfied as of the effective date of the FSA. The respondent maintains that the petitioner satisfied that sentence on June 27, 2016, when he was released via GCT and sentences satisfied prior to the effective date of the FSA are not eligible to receive additional GCT. Therefore, the respondent maintains that the petitioner is not entitled to any additional GCT toward that term of confinement.

The petitioner continues to argue that his sentence for supervised release violation is a part of his original sentence, and he is entitled to additional credit against his 63 month sentence. The petitioner cites no case law for this position, and the undersigned has not located any. Moreover, the petitioner's argument is not persuasive. The petitioner was sentenced to a term of 63 months which was subsequently reduced to 60 months. He was released from the custody of the BOP on June 27, 2016, when that sentence was satisfied via GCT, and his full term expiration date was February 17, 2017. ECF No. 12-2 at p. 8. The petitioner's 18 month sentence for violating the terms of his supervised release is a new and separate sentence that does not "reactivate" his original sentence. To hold otherwise would unjustly enrich the petitioner for new criminal conduct. Therefore, the undersigned is of the opinion that the petitioner has received all the GCT to which he is entitled against his current term of incarceration.

**Time Credits**

The First Step Act initiated a system that allows eligible prisoners to earn time credits for successfully completing "evidence-based recidivism programming. More specifically, a prisoner will earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities. 18 U.S.C. § 3632(d)(4)(A)(i). In addition, a prisoner, who is determined to be a minimum or low risk of recidivating, will earn an additional 5 days of time credits for every 30 days of successful participation if he has not increased his risk of recidivism over two consecutive assessments. 18 U.S.C. § 3632(d)(4)(A)(ii).

However, these programs did not go into effect immediately. 18 U.S.C. § 3632(d)(4). The Attorney General was allowed 210 days after the First Step Act was

enacted, on December 21, 2018, to develop and publish the Risk and Needs Assessment System, which the BOP was to use as a guide to implement the programs. 18 U.S.C. § 3632(a). The Attorney General published the Risks and Needs Assessment System on July 19, 2019.[1] The BOP then had 180 days, or until January 15, 2020, to implement the system, complete inmate assessments, and then begin to assign prisoners to appropriate evidence-based recidivism reduction programs. 18 U.S.C. § 3621(h). Therefore, the petitioner's claim for time credits did not ripen until January 15, 2020, and he prematurely filed this petition as it relates to the same.[2]  If he continues to believe that he is entitled to time credits for programming he has completed during his incarceration since May 1, 2019, he must address his request first through the BOP administrative grievance process.

**Home Confinement**

As previously noted, in his Response to the respondent's motion to dismiss or for summary judgment, the petitioner requests that this Court consider him for home confinement under the First Step Act. The undersigned acknowledges that the First Step Act re-authorizes the BOP to conduct a home confinement pilot program for elderly offenders. That statute, as amended by the FSA, now reads in pertinent part"

   **(A) In general**

      The Attorney general shall conduct a pilot program to determine the effectiveness of removing eligible elderly offenders and eligible terminally

---

[1] The First Step Act of 2018: Risk and Needs Assessment System, accessible online at https://nij.ojp.gov.sites/g/files/xyckuh171/files/media/document/the-first-step-act-of-2018-risk-and-needs-assessment -system_1.pdf.

[2] Furthermore, the petitioner may not earn credits for any evidence-based recidivism reduction program that he successfully completed prior to  the date of the enactment of the FSA. 18 U.S.C. § 3632(d)(4)(B)(i).Therefore, to the extent that the petitioner is seeking time credits for any programs he completed prior to initial release from custody on June 27, 2016, the same is clearly misguided.

10

>ill offenders from Bureau of Prisons facilities and placing such offenders on home detention until the expiration of the prison term to which the offender was sentenced.
>
>**(B) Placement in home detention**
>In carry out a pilot program as described in subparagraph (A) the Attorney General **may release** some or all eligible elderly offenders and eligible terminally ill offenders from Bureau of Prisons facilities to home detention, upon written request from either the Bureau of Prisons or an eligible elderly offender or eligible terminally ill offender.

34 U.S.C. §60541(g)(1)(A) and (B) (emphasis added). For the definition of an "eligible elderly offender" see 34 U.S.C. § 60541(g)(5)(A).

The petitioner alleges that he meets the age and 2/3 service of sentence requirement but fails to provide any supporting evidence regarding the remaining subsections of § 60541(g)(5)(A). Regardless of the petitioner's eligibility, the Supreme Court has held that a prisoner has no constitutional right to confinement in any particular place, including in home confinement. See McKune v. Lile, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); Sandlin v. Conner, 515 U.S. 472, 478 (1995) ("[T]he Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers.") (citation omitted); Meachum v. Fano, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons."). Moreover, the Attorney General—and by delegation the BOP—has exclusive authority and discretion to designate the place of an inmate's confinement. Therefore, this Court has no authority to order the petitioner's placement on home confinement.

## IV.     Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** that respondent's "Motion to Dismiss or for Summary Judgment" **[ECF No. 12]** be **GRANTED**, and that the petitioner's Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 **[ECF No. 1]** be **DENIED** and **DISMISSED WITH PREJUDICE**.

Each party shall have **fourteen (14) days** from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is **DIRECTED** to provide a copy of this Report and Recommendation to counsel of record and to mail a copy to the *pro se* Petitioner by certified mail, return receipt requested. In addition, because this Report and

Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

    DATED:  March 16, 2020.

                                  */s/ James P. Mazzone*
                                  JAMES P. MAZZONE
                                  UNITED STATES MAGISTRATE JUDGE